Plaintiff, a partnership composed of W. D. Walker and his son, Olander B. Walker, which, under a written contract dated June 10, 1948, undertook to level to its previous standing a double house owned by defendant, for a stipulated price of $590.00, brings this suit against defendant seeking to recover $190.00, the alleged unpaid balance due on the contract, plus $43.00 for extra work. Defendant, in his answer, avers that the contract was never fully performed, and that whatever work was done was so imperfect that it was necessary that he employ the services of another contractor at a cost of $378.00. Defendant alleged that the extra work amounted to $16.00, and not $43.00 as claimed in the petition. Defendant prayed for the dismissal of the suit, and for $188.00 in reconvention. This appeal has been taken by defendant from the judgment below, which awarded plaintiff the amount sued for and dismissed the reconventional demand.
Defendant paid plaintiff $200.00 upon the confection of the contract, and another $200.00 on Saturday, July 3, 1948, thus leaving the alleged balance of $190.00. The salient point in the case is the status of the work as of the date of the payment of the second $200.00. Both Walkers testified that all of their work had been fully and completely performed, and that the defendant then owed them $390.00 under the contract, plus $43.00 for the extra work, but that he refused to pay the full amount and paid only $200.00, withholding the balance because of his claim that the electric wires in the house had been damaged by plaintiff. On the other hand, defendant advances a different version. He claims that the $200.00 constituted an advance which he made to the Walkers at their request, in order that they might meet their weekly payroll. Defendant asserted that the job was not finished at the time, and that jacks and other equipment belonging to plaintiff were still under the house. This the Walkers vehemently deny. They state that all of their jacks and equipment had been removed a few days previously, and were actually being used at the time on another job in the neighborhood.
The parties concede that there was some discussion regarding the electrical wiring in the house. On the same day, but after the $200.00 was paid, plaintiff sent to the scene a workman, who found that the difficulty existing in the electrical wiring system emanated from a burned out fuse, which he promptly replaced.
The Walkers returned on the following Monday. The testimony of the younger Walker intimates that the defendant was not at home then. However, defendant's story is that he was there when the Walkers called on Monday, and that he spoke to them about completing the job. The import of the Walkers' testimony is that they *Page 401 
had no conversation with the defendant, but that they spoke with defendant's brother, and that the brother complained that some sills had not been changed and that the contract, in that respect, had not been complied with.
On the following day, plaintiff placed the matter in the hands of an attorney, who made demand by letter upon defendant for the payment of the balance due on the contract and for the amount of the extra work. Defendant's testimony is that upon returning from his work on Tuesday, he noticed that the jacks and equipment had been removed from under the house.
Upon receipt of the letter on Wednesday, defendant immediately visited plaintiff's attorney and complained that the Walkers had not complied with their contract. At defendant's invitation, the attorney made an inspection of the premises and informed defendant that he would consult his client regarding the matter.
After receiving a letter dated July 12 from plaintiff's attorney, which in substance stated that W. D. Walker Son contended that all work contracted for had been completed in accordance with the contract, and that any unevenness existing in the floor was due to weak or warped floor supports, Markey then retained his own attorney, who, on July 13, wrote to plaintiff's counsel reiterating Markey's plea of noncompliance with the contract. Plaintiff's counsel was given to understand that the defendant was seeking bids from other contractors for the completion of the work.
Defendant ultimately obtained a bid from the Southern Shoring Company for $378.00, and a copy thereof was sent to plaintiff's attorney on July 23. Plaintiff was informed that defendant intended to employ Southern Shoring Company to finish the job, unless plaintiff evidenced an intention to complete it by starting work thereon not later than July 28.
On July 29, one day after the time limit thus set, Markey, having heard nothing from W. D. Walker Son or its attorney, entered into a contract with the Southern Shoring Company for $378.00. The Southern Shoring Company started its job about August 1 and completed the work about August 15; defendant paid the contract price, plus $89.00 for extra work in replacing sills. No defects appeared in the premises after the Southern Shoring Company finished its job.
It appears that on July 30 Hiram A. R. Gray, an engineer, was employed by plaintiff to make an inspection of the premises. However, Gray did not visit the premises for that purpose until August 18, by which date Southern Shoring Company had completely performed its contract. Gray's testimony is interesting. He found the premises completely leveled, and testified that the mortar on the chimneys showed an age of about twenty to twenty-eight days, which he determined by making certain scientific tests. That the witness was incorrect in his estimation of the age of the mortar is attested to by the fact that plaintiff did no work on the premises after July 3, and Southern Shoring Company did not commence its job until about August 1; therefore, according to Gray, the mortar was placed on the chimneys some time during the interval between the two jobs. Gray further stated that he knows the masonry work on the chimneys was that of Olander B. Walker, because he was familiar with Walker's handiwork and readily recognized it on the chimneys.
Three employees of the Southern Shoring Company were produced as defense witnesses. The estimator and the manager of that company testified that the floor of the house, as W. D. Walker Son left it, sloped from both sides towards the center line along which the chimneys were constructed, and that the depression was greatest in the front part of the house and gradually decreased towards the rear. These three witnesses also found that the front porch had a backward pitch instead of sloping away from the house. These conditions were denied by the Walkers. W. D. Walker's testimony is that after the jacks were removed the house was perfectly level, and that the defects testified to by the employees of Southern Shoring Company were not present.
W. D. Walker also testified that he "fell out" with Markey because, "What E. Markey wanted me to do was to change the *Page 402 
sills without any pay, which wasn't in my contract."
During the course of the Walkers' job, the defendant's attention was directed to some sills which were rotten. Plaintiff replaced 14' of sill. The record does not reflect who paid the cost of the lumber used, but we gather that Markey purchased the sill himself and plaintiff installed it without charge. W. D. Walker further testified that, in regard to the other sills, Markey said, "I think we can get by."
That some of the sills were in poor condition is clearly shown by the testimony of the employees of Southern Shoring Company. When they embarked on the contract, defendant had them to replace certain of the sills for an extra price of $89.00.
The judge a quo examined the Southern Shoring Company's employees at considerable length, particularly as to whether a building could be properly leveled if it rested on rotten or defective sills. Cutror testified:
"Q. You know with rotten sills under a house it is impossible to bring the house to a complete level, don't you? A. I know that, yes sir."
LeBlanc, when asked if the house could have been leveled under such condition, answered, "No sir, it can't be done, I don't believe."
Reynolds, the manager, stated that the sills on the downtown side and around the rear were in bad enough condition to warrant their being replaced. However, he was in disagreement with his two fellow workers, for we find that he stated that notwithstanding the rottenness of the sills the house could have been completely leveled by building up the piers to the bottom of the floor joists.
The trial judge, who did not favor us with written reasons for judgment, was evidently of the opinion that the condition of the sills prevented plaintiff from bringing the flooring to a perfect level, and there appears no manifest error in this finding. Our study of the record satisfies us that the judgment is correct. It is conceded that plaintiff was under no obligation whatever to replace the sills, and we are inclined to believe that the contention of defendant's brother, that plaintiff should have replaced the rotten sills, prompted the defendant also to adopt this position. Why, we ask, did Markey pay Southern Shoring Company $89.00 extra for replacing rotten sills, if the floor could have been leveled without such replacement?
The item of $43.00 is for raising the front steps to compensate the new level of the porch. Defendant admits that he authorized the work, but contends that plaintiff quoted a price of $16.00 therefor. Defendant alternatively contends that the item cannot be allowed because plaintiff has not proved it with certainty. We think that the proof is ample. Olander B. Walker worked for seventeen hours on this extra work, and there is nothing which leads us to believe that the charge is exorbitant. There is no merit in defendant's contention that the job was to be done for $16.00. His testimony alone supports this contention, and the Walkers emphatically deny it.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed. *Page 403